PER CURIAM.
Petitioner P.K.B. asks this Court to review the recommendations of the Florida Board of Bar Examiners. We have jurisdiction. Art. V, § 15, Fla. Const.
P.K.B. filed an application for admission to The Florida Bar on April 10, 1997. During the course of the Board of Bar Examiners’ background investigation, several matters were discovered which reflected negatively on P.KJB.’s character and fitness to practice law. The specifications filed against P.K.B. and found proven by the Board after a formal hearing essentially alleged the following.
In January of 1989, P.K.B. damaged a door in his fianeé’s father’s home after the father’s dog tried to attack his fiancé’s pet chinchilla. P.K.B. was charged with criminal trespass, but the charges were dropped. A few days after this incident, P.K.B. shot and killed the dog. Subsequently, P.K.B. was arrested and charged with cruelty to animals and obstruction of an officer. On his application for admission to law school, P.K.B. failed to disclose the obstruction arrest and charge, and while he disclosed that he had been charged with cruelty to animals and criminal trespass and that those charges had been dropped, he failed to disclose that they were dropped conditioned upon his making restitution.
In 1985, P.K.B. was arrested for DUI. At the time of his arrest, his blood alcohol content was approximately .16 or .17. P.K.B. attended DUI school and performed 100 hours of community service, and the charges were nolle prossed. In 1987, P.K.B. was again arrested for DUI. At the time of this arrest, he falsely informed the arresting officer that he had consumed two beers approximately one hour before being stopped, and he refused to submit to roadside sobriety or blood alcohol tests. P.KB.’s license was suspended, and he was acquitted at trial. In 1991, P.K.B. was cited for having an open container of alcohol while a passenger in a car. On March 15, 1998, several weeks after formal specifications had been filed against him, P.K.B. was again arrested for DUI, and was also charged with careless driving and leaving the scene of an accident. The charges resulting from this incident were eventually nolle prossed. However, the arresting police officer reported that at the time of his arrest, P.K.B. had a strong odor of alcohol, bloodshot eyes, and slurred speech, and a witness who had been with P.K.B. prior to his arrest testified that P.K.B. had consumed more alcohol than was appropriate before the police encounter.
The Board concluded that P.KB.’s conduct as described above “display[ed] a pattern of serious lapses in judgment” and concluded that the instances of misconduct were collectively disqualifying. Additionally, the Board noted “particular concern” regarding “the evidence in the record which suggests that [P.K.B.] may have a substance abuse problem.” Accordingly, the Board recommended that P.K.B. be denied admission to The Florida Bar at this time. P.K.B. now seeks review of the Board’s recommendation.
This Court has set forth the test to be applied in determining character and fitness for admission to The Florida Bar: “First, are the facts in this case such that a reasonable [person] would have substantial doubts about the petitioner’s honesty, fairness, and respect for the rights of others and for the laws of the state and nation? Second, is the conduct involved in this case rationally connected to the petitioner’s fitness to practice law?” Florida *1287 Bd. of Bar Exam’rs Re G.W.L., 364 So.2d 454, 459 (Fla.1978).
The killing of his fíancé’s father’s dog and damaging the father’s property raise very serious doubts about P.KB.’s respect for the rights of others and for the law. Simply because an animal had caused what P.K.B. considered to be past problems, the cold-blooded execution of the animal was deemed to be the proper and expedient way to deal with the problems. Not only did P.K.B. have adequate time to reflect upon his intentions, he very coldly and in a very calculated manner planned the execution-style killing, walked the dog into nearby woods, and even used the dog owner’s gun and ammunition to inflict his insidious harm.
Of even greater concern and further exacerbating the underlying flaws are P.KB.’s misrepresentations to police attendant to his DUI arrests[1] and his omission and misleading explanation of his pri- or arrests on his law school application. Such conduct raises substantial doubts about P.KB.’s honesty. This Court has previously disciplined a practicing attorney for lying to a police officer and in so doing, noted that “[hjonesty and candor in dealing with others is part of the foundation upon which respect for the profession is based.” Florida Bar v. Poplack, 599 So.2d 116, 118 (Fla.1992). Additionally, this Court has stated that a misleading response regarding prior arrests on a law school application “clearly displays a lack of candor.” Florida Bd. of Bar Exam’rs re C.A.M., 639 So.2d 612, 613 (Fla.1994). Here, through his misleading response, P.K.B. attempted to create the illusion that he had been falsely charged with cruelty to animals when nothing could have been further from the truth. The misrepresentations on P.KB.’s law school application and his misrepresentations to police during his 1998 DUI arrest are particularly troubling due to the recent time frame within which the conduct occurred.
Finally, P.KB.’s actions in driving after drinking and admittedly driving while impaired by alcohol also raise substantial doubts' about his respect for the law and for the rights of others. P.K.B. admitted being legally impaired when he was arrested in 1985, and while he denied being legally impaired when arrested in 1987 and 1998, he admitted that on each of these occasions, he consumed some amount of alcohol prior to operating a motor vehicle. Additionally, P.K.B. admitted driving while actually impaired on other occasions. Thus, based on his own testimony, the Board was justified in finding that he exercised poor judgment on several occasions with regard to drinking and driving- — both when he was arrested and when he was not.
We find that the proven specifications, when considered in the aggregate, are sufficient to justify nonadmission at this time. The record here shows a long history of disregard for the regulations governing our society and indicates an approach to life that the rules are only for others to follow. Such an approach is contrary to the character and fitness required to practice law in this state. Accordingly, the Board’s recommendation that P.K.B. not be admitted to The Florida Bar at this time is approved.
It is so ordered.
HARDING, C.J., and SHAW, WELLS, ANSTEAD, PARIENTE, LEWIS and QUINCE, JJ., concur.

. While not alleged in the specifications, P.K.B. admitted at the formal hearing that he made a misleading statement to police during his 1998 arrest. He testified that when the police officer questioned him about his alcohol consumption, he replied that he had "a beer” when, in fact, he had consumed more than one beer.